BARRY C. LEVINE v. PARKS CHEVROLET, INC., CLARENCE MILLNER AND
WIFE, GLORIA HAIRSTON MILLNER, WACHOVIA BANK & TRUST COM-
PANY, N. A. AND TOWN AND COUNTRY MOTORS, INC.

No. 8418DC1212

(Filed 16 July 1985)

1. **Automobiles and Other Vehicles § 6.5— knowingly giving a false odometer
   statement—evidence sufficient**

   There was no error in the denial of Parks Chevrolet's motions for a
   directed verdict and for judgment n.o.v. in an action for knowingly giving a
   false odometer statement where the evidence was sufficient to permit the jury
   to find that Parks Chevrolet had some question as to the verity of the
   odometer mileage, any mechanic could have ascertained from the grease
   buildup on the chassis that the vehicle had been driven more than 14,000 or
   15,000 miles, several pieces of equipment, most noticeably the tires, were not
   of the original brand, and the truck showed other signs of wear, yet all that
   Parks Chevrolet did to confirm the mileage was to drive the vehicle, examine
   the interior, and compare the mileage on the inspection sticker with the
   mileage on the odometer. G.S. 20-347, G.S. 20-348.

2. **Automobiles and Other Vehicles § 6.5— false odometer statement—refusal to
   submit separate issues of knowledge and intent to defraud**

   The trial court did not err in an action for giving a false odometer state-
   ment by not submitting to the jury separate issues as to defendant's knowl-
   edge and intent to defraud; furthermore, the court's charge in its entirety
   adequately recapitulated the evidence and applied the law to the evidence.

3. **Automobiles and Other Vehicles § 6.5— false odometer statement—instruction
   that sale price of previous owner reflected mileage—no error**

   The trial court did not err in an action for giving a false odometer state-
   ment by instructing the jury that the price asked by defendant Wachovia took
   into consideration the actual mileage of the vehicle and by refusing defendant
   Parks Chevrolet's request for a similar instruction where Wachovia had of-
   fered evidence that it offered the vehicle at a price equal to the vehicle's ac-
   tual wholesale value according to the N.A.D.A. guide without profit being a
   motive, and Parks Chevrolet admitted that it was in the business of making a
   profit and offered no evidence as to book value.

4. **Automobiles and Other Vehicles § 6.5— false odometer statement—attorney's
   fees and treble damages**

   The trial court did not err in an action for giving a false odometer state-
   ment by trebling damages and awarding attorney's fees where there was suffi-
   cient evidence of intent to defraud.

APPEAL by defendant Parks Chevrolet, Inc. from *John,
Judge*. Judgment signed 3 August 1984, *nunc pro tunc* 27 July

1984 in District Court, GUILFORD County. Heard in the Court of Appeals 16 May 1985.

This action arises out of the purchase of a truck by plaintiff from defendant Parks Chevrolet, Inc. The other defendants, or their agents, are in the chain of title of defendant Parks Chevrolet. Plaintiff alleged in his complaint, *inter alia,* that defendant Parks Chevrolet sold him a 1979 Chevrolet Scottsdale pickup truck and delivered to him an odometer disclosure statement certifying that the mileage shown on the odometer, 14,563, was the correct mileage of the vehicle, when in fact, the vehicle had been driven 100,000 more miles. He alleged defendant Parks Chevrolet violated G.S. 20-347 and 15 U.S.C. 1988 by knowingly, with the intent to defraud, giving a false odometer disclosure statement.

The evidence presented at trial tended to show that the vehicle in question was purchased new by defendant Wachovia Bank and Trust Co. on 5 March 1979. Defendant Wachovia kept the vehicle for approximately two years, when it decided in March 1981 to sell the vehicle after it had been driven approximately 113,000 miles. Wachovia enlisted defendant Town and Country Motors, Inc. to sell the vehicle. Defendant Town and Country cleaned the vehicle. This cleaning consisted of washing and polishing the vehicle, but did not include removal of grease and grime which had accumulated underneath the vehicle. The president of Town and Country Motors could not say whether or not the engine had been cleaned.

Town and Country Motors sold the vehicle to defendant Gloria Millner on 27 March 1981. Title to the vehicle was placed in Mrs. Millner's name. At the time of sale, the odometer, which registered only five digits, showed between 13,000 and 14,000 miles. Neither Wachovia nor Town and Country Motors gave Mrs. Millner an odometer disclosure statement. The Millners kept the vehicle until December 1981, when Mr. Millner sold the vehicle to defendant Parks Chevrolet.

When Mr. Millner sold the vehicle to defendant Parks Chevrolet, he signed an odometer disclosure statement in blank, meaning he signed the statement leaving the mileage figure blank to be filled in later by defendant Parks Chevrolet. Defendant Parks' sales agent subsequently filled in the blank with the odometer reading on the vehicle. Parks' truck manager testified that he ex-

amined the interior of the truck, test drove the vehicle, and compared the mileage on the odometer, 14,485, with the mileage on the safety inspection sticker as of March 1981, which showed a mileage of 12,787, and found nothing to arouse suspicion as to the accuracy of the mileage. He did not examine underneath the vehicle.

Parks then sold the vehicle to plaintiff on 5 January 1982. It gave plaintiff a mileage disclosure statement certifying that the mileage on the vehicle's odometer, 14,485, was the actual mileage of the vehicle. A few days after purchasing the truck, plaintiff noticed strange marks on the truck while cleaning the vehicle. Upon further investigation, he noticed the front and rear tires were of different brands, neither of which were of the original brand. He examined the spare tire, which was of the original brand, and saw that it was worn. He also noticed that the place "where your feet skid" as you get in and out of the truck was also worn. He subsequently discovered that the battery was not an original battery, but a NAPA brand battery, and that the shock absorbers were also NAPA brand. Plaintiff contacted a mechanic, Larry Melvin, who examined the vehicle and observed a large amount of grease and grime underneath the vehicle. Melvin indicated at trial that this grease and grime buildup was an indicator of high mileage.

Plaintiff subsequently learned that Wachovia Bank and Trust Co. was the original owner of the vehicle. Plaintiff contacted Wachovia's fleet manager, Mr. William Davis, who told plaintiff that the truck had more than 100,000 miles on it when it sold the vehicle to defendant Gloria Millner. Plaintiff then called defendant Parks and spoke with Parks' assistant truck manager, Mr. Lewis Cornett. Upon informing Cornett that the truck had more than 100,000 miles on it, plaintiff testified that Cornett remarked that "there was some discrepancy in the mileage statement, the one he received from the prior owner."

Davis of Wachovia Bank and Trust also telephoned Parks and spoke with Mr. Eugene Smith, truck manager for Parks Chevrolet. Davis testified that he asked Smith, "[W]eren't they aware that the truck had over 100,000 miles on it?" to which Smith responded, "[W]e questioned Mr. Millner on that point but he kind of got huffy with us and acted like we were insulting him so we

kind of back (sic) off because we were afraid we would blow the deal."

At the conclusion of the evidence, the jury found that defendant Parks Chevrolet, knowingly and with the intent to defraud, gave a false odometer disclosure statement to plaintiff. The jury absolved all other defendants of liability. The jury also awarded plaintiff damages, which the court trebled pursuant to G.S. 20-348 and 15 U.S.C. 1989. The court also awarded plaintiff attorney fees pursuant to G.S. 20-348 and 15 U.S.C. 1989. Defendant Parks Chevrolet appeals.

*Alexander Ralston, Pell & Speckhard, by Stanley E. Speckhard, for plaintiff appellee.*

*Henson, Henson & Bayliss, by Perry C. Henson, Jr., for defendant appellant Parks Chevrolet, Inc.*

JOHNSON, Judge.

[1] Defendant Parks Chevrolet contends that the court erred in denying its motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence and for judgment notwithstanding the verdict because there was insufficient evidence to support a finding that defendant Parks knew the odometer reading was incorrect and that it acted with intent to defraud. We disagree.

This action was tried under G.S. 20-347 & 48 and 15 U.S.C. 1988-89. G.S. 20-347 provides in pertinent part:

(a) In connection with the transfer of a motor vehicle, the transferor shall deliver to the transferee, prior to execution of any transfer of ownership document, a single written statement which contains the following:

(1) The odometer reading at the time of the transfer;

(2) The date of the transfer;

(3) The transferor's name and current address;

(4) The identity of the vehicle, including its make, model, body type, its vehicle identification number, and the license plate number most recently used on the vehicle;

(5) A statement that the mileage is unknown if the transferor knows the odometer reading differs from the number of miles the vehicle has actually traveled, and that the difference is greater than that caused by odometer calibration error;

(6) A statement describing each known alteration of the odometer reading, including date, person making the alteration, and approximate number of miles removed by the alteration; and

(7) Disclosure of excess mileage when vehicle is known to have exceeded 100,000 miles and the odometer records only five whole-mile digits.

Provided that the certificate of title or other ownership documents shall be used in lieu of the single written statement if the title or ownership document contains the information set forth in subsection (a).

. . .

c. It shall be unlawful for any transferor to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure statement by such rules.

G.S. 20-348 provides:

(a) Any person who, with intent to defraud, violates any requirement imposed under this Article shall be liable in an amount equal to the sum of:

(1) Three times the amount of actual damages sustained or one thousand five hundred dollars ($1,500), whichever is the greater; and

(2) In the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) An action to enforce any liability created under subsection (a) of this section may be brought in any court of the trial division of the General Court of Justice of the State of North Carolina within four years from the date on which the liability arises.

The comparable federal statutes, 15 U.S.C. 1988 & 1989, are virtually identical. Because of the similarities between G.S. 20-347 & 48 and 15 U.S.C. 1988 & 1989, we find the following federal cases construing the federal statutes to be instructive.

In *Nieto v. Pence*, 578 F. 2d 640 (5th Cir. 1978), the Court held that although the transferor did not have actual knowledge that the mileage shown on the odometer, 14,000, was incorrect, the dealer should have known that the reading of 14,000 on a ten year old truck was incorrect, and thus was liable under 15 U.S.C. 1988 & 1989. Relying upon the following legislative history of 15 U.S.C. 1988, the Court concluded that a transferor has a duty to disclose that the actual mileage was unknown if, in the exercise of reasonable care, he would have had reason to know that the mileage was other than that recorded by the odometer or the previous owner had certified:

> [Section 1988] makes it a violation of the title for any person "knowingly" to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of "knowingly" was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark "true mileage unknown" if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified. 1972 U. S. Code Cong. & Admin. News pp. 3971-72.

With regard to the question of intent to defraud, the Court looked to decisions of other federal courts construing 15 U.S.C. 1989 and concluded that a transferor who lacked actual knowledge may still be found to have intended to defraud and may be liable for failure

to disclose that the vehicle's mileage is unknown. The Court stated:

> We hold that a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.

578 F. 2d at 642.

In *Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F. Supp. 889 (W. D. Pa. 1977), the Court held that the practice of preparing odometer disclosure statements simply on the basis of the odometer reading and then failing to disclose that the actual mileage is unknown showed a reckless disregard for the purpose of the odometer disclosure law and that such recklessness constituted fraudulent intent mandating the imposition of civil liability.

In *Tusa v. Omaha Auto Auction Inc.*, 712 F. 2d 1248 (8th Cir. 1983), an automobile auction company was held liable under 15 U.S.C. 1989, although it did not have actual knowledge that an odometer reading was not the actual mileage of the vehicle. The Court, however, found constructive knowledge and an intent to defraud based upon two factors. First, the Court noted that a mileage figure on a certificate of title in the defendant's chain of title had noticeably been altered. Second, the Court found that the defendant's method of preparing odometer disclosure statements in which the defendant simply filled in the odometer reading on the vehicle on the odometer disclosure statement, which had been signed but left blank by the previous transferor, was sufficient to support a finding of an intent to defraud. The defendant had made no effort to obtain previous odometer disclosure statements and to determine whether the vehicle had been driven more than 100,000 miles. The Court commented that because a buyer could read an odometer just as the defendant did, the defendant was not providing any additional information. The defendant's practice thus showed a complete disregard for the purpose

of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. 1981 to 1991.

Based upon the foregoing authorities, we hold the evidence in the present case was sufficient to permit a jury to find that defendant Parks Chevrolet, in the exercise of reasonable care, should have known that the mileage was other than that recorded by the odometer and that defendant Parks Chevrolet acted with the intent to defraud. The evidence showed that defendant Parks Chevrolet had some question as to the verity of the odometer mileage, yet all it did to confirm the mileage was to drive the vehicle, examine the interior and compare the mileage on the inspection sticker with the mileage on the odometer. The evidence also showed, however, that any mechanic could ascertain from the grease buildup on the chassis that the vehicle had been driven more than 14,000 or 15,000 miles, that several pieces of equipment, most noticeably the tires, were not of the original brand, and that the truck showed other signs of wear. As the legislative history to 15 U.S.C. 1988 indicates, to allow a dealer with expertise to ignore such indicators of wear would be to eviscerate the purpose of the statute.

[2] Defendant Parks Chevrolet next contends that the court erred in refusing to submit separate issues to the jury as to defendant's knowledge and as to defendant's intent to defraud. We find no error. The court submitted the following issue to the jury:

Did the Defendant, Parks Chevrolet, Inc., by and through its agents or employees, in connection with the transfer of ownership of the 1979 Chevrolet truck to the Plaintiff, Barry C. Levine, knowingly and with the intent to defraud, give a false odometer disclosure statement to the Plaintiff, Barry C. Levine?

The Court, therefore, required the jury to find both knowledge and an intent to defraud.

Defendant next contends that the court erred in failing to recapitulate the evidence to the extent necessary to explain the application of the law to the evidence. We have examined the court's charge in its entirety and are satisfied that the court adequately recapitulated the evidence and applied the law to the evidence.

[3] Defendant Parks Chevrolet next contends that the court failed to give equal stress to the contentions of the parties when it instructed the jury that defendant Wachovia contended that "the price asked by defendant Wachovia for the vehicle was fair and took into consideration the actual mileage" of the vehicle but refused defendant Parks Chevrolet's request for a similar instruction. This contention has no merit. Defendant Wachovia Bank and Trust Co. contended and offered evidence to show that if offered the vehicle for sale at a price equal to the vehicle's actual wholesale value according to the N.A.D.A. Official Used Car Guide, without profit being a motive. On the other hand, defendant Parks Chevrolet admitted that it was in the business of making a profit and offered no evidence as to book value showing how it arrived at its sale price of $6,195.00. Thus, the parties' contentions were different. Moreover, we have examined the court's charge and find that the court did indeed give equal stress to defendant Parks Chevrolet's contentions.

[4] Defendant Parks Chevrolet's remaining contention is that the court erred in trebling damages and in awarding attorney fees to plaintiff because there was no evidence of intent to defraud. This contention has no merit as we have held for the reasons stated *supra* that there was sufficient evidence of intent to defraud.

For the foregoing reasons, we find

No error.

Judges WELLS and COZORT concur.