JOHN McCRACKEN v. ANDERSON CHEVROLET-OLDS, INC.

No. 8630SC94

(Filed 19 August 1986)

1. **Automobiles and Other Vehicles § 6.5— false odometer statement—civil liability—proof required**

   To make out a *prima facie* case for private enforcement of the Vehicle Mileage Act through a civil action, a plaintiff must establish a violation of a requirement under the Vehicle Mileage Act that was made with intent to defraud. Proof that the defendant knowingly gave a false mileage statement may be made by showing that the transferor actually knew the odometer was incorrect and failed to indicate that the true mileage was unknown, or by demonstrating that the transferor had constructive knowledge that the odometer was incorrect. Proof by constructive knowledge does not preclude a finding of intent to defraud; plaintiff need only present evidence that the transferor's actions toward determining true mileage were grossly negligent or that the transferor recklessly disregarded indications that the odometer was inaccurate. N.C.G.S. § 20-348, N.C.G.S. § 20-347.

McCracken v. Anderson Chevrolet-Olds, Inc.

**2. Automobiles and Other Vehicles § 6.5— action for false odometer statement — evidence insufficient**

> The trial court erred by failing to direct a verdict in favor of defendant in an action in which plaintiff alleged that defendant had violated the odometer disclosure requirements of N.C.G.S. § 20-347 (1983) with the intent to defraud him where it was doubtful that the evidence was sufficient to prove that the car had actually been driven more than the mileage indicated; it was questionable whether the evidence would have been sufficient to go to the jury on a negligence standard; and there was no evidence that defendant was grossly negligent, recklessly disregarded indications that the odometer reading was inaccurate or in any way demonstrated the intent to defraud.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 29 September 1985 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 10 June 1986.

*No brief was filed on behalf of plaintiff appellee.*

*Morris, Golding, Phillips & Cloninger, by James N. Golding and Thomas R. Bell, Jr., for defendant appellant.*

*Johnson, Gamble, Hearn & Vinegar, by Samuel H. Johnson and Richard J. Vinegar, filed a brief as amicus curiae for North Carolina Automobile Dealers Association.*

BECTON, Judge.

John McCracken sued Anderson Chevrolet-Olds, Inc. (Anderson) for damages arising out of his purchase of a diesel-engine 1981 Oldsmobile Cutlass. McCracken claimed that Anderson violated the odometer disclosure requirements of N.C. Gen. Stat. Sec. 20-347 (1983) with the intent to defraud him. He sought treble damages and attorney's fees under N.C. Gen. Stat. Sec. 20-348(a) (1983). After accepting a $3,000 jury verdict, the trial court trebled the damages and entered judgment against Anderson for $9,000 plus $800 in attorney's fees.

On appeal, Anderson argues that the trial court committed reversible error in failing to grant its motions for a directed verdict and judgment notwithstanding the verdict because (1) McCracken failed to establish grossly negligent or reckless conduct on the part of Anderson, and (2) even if the standard were negligence, there was insufficient evidence of negligence to go to the jury. Anderson also contends the court erred in (3) allowing a lay witness to give an expert opinion; (4) allowing McCracken to

McCracken v. Anderson Chevrolet-Olds, Inc.

establish damages with hearsay evidence; (5) instructing the jury on incidental damages; and (6) instructing the jury on the standards for reasonable care and constructive knowledge. McCracken did not file a brief on appeal. The North Carolina Automobile Dealers Association filed a brief as *amicus curiae*, urging us to reverse the trial court.

We hold that in order to establish liability under G.S. Secs. 20-347 and -348 the plaintiff must show (1) that the seller had either actual or constructive knowledge that the odometer was materially incorrect, and (2) that the seller acted with gross negligence or recklessness. The trial court erroneously instructed the jury that liability could be imposed if it found that Anderson had made a false representation of the odometer reading, and that Anderson "knew that it was false, or in the exercise of reasonable care, should have known that it was false." The court erred in failing to instruct the jury that a finding of intent to defraud required more than mere negligence; it should have instructed the jury on gross negligence and recklessness. And because the facts in this case, taken in a light most favorable to McCracken, fail to raise more than a suspicion of gross negligence or recklessness, the court erred in failing to direct the verdict in favor of defendant. The judgment of the trial court is reversed. We do not address Anderson's remaining arguments.

I

Any party who transfers ownership of a motor vehicle in this State must comply with the written disclosure requirements in G.S. Sec. 20-347(a). The transferor must provide:

(1) The odometer reading at the time of the transfer;

. . . .

(5) A statement that the mileage is unknown if the transferor knows the odometer reading differs from the number of miles the vehicle has actually traveled, and that the difference is greater than that caused by odometer calibration error;

(6) A statement describing each known alteration of the odometer reading, including date, person making the alteration, and approximate number of miles removed by the alteration; and

(7) Disclosure of excess mileage when vehicle is known to have exceeded 100,000 miles and the odometer records only five whole-mile digits.

The statute declares it unlawful for any transferor "to violate any rules under this section or to knowingly give a false statement to a transferee in making any disclosure required by such rules." G.S. Sec. 20-347(c). Violation of this statute may be enjoined as an unfair and deceptive trade practice or punished as a misdemeanor. N.C. Gen. Stat. Sec. 20-349, -350 (1983).

The legislature also provided for private enforcement through civil actions under G.S. Sec. 20-348, which states in part:

(a) Any person who, with intent to defraud, violates any requirement imposed under this Article shall be liable in an amount equal to the sum of:

(1) Three times the amount of actual damages sustained or one thousand five hundred dollars ($1,500), whichever is the greater; and

(2) In the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

The statutes quoted above are substantially the same as their federal counterparts, 15 U.S.C.A. Secs. 1988 and 1989 (1982).

[1]    To make out a *prima facie* case under G.S. Sec. 20-348(a), a plaintiff must establish (1) a violation of a requirement imposed under Article 15 (Vehicle Mileage Act) (2) that was made with the intent to defraud. We will examine these elements separately.

A

If the plaintiff attempts to satisfy the first element by demonstrating that the defendant, in transferring a vehicle, knowingly gave a false mileage statement, the plaintiff may succeed on this element in either of two ways. First, proof that the transferor actually knew the odometer was incorrect and failed to indicate that true mileage was unknown will satisfy this first element. The second method is to demonstrate that the transferor had constructive knowledge that the odometer was incorrect.

Constructive knowledge is established upon proof that the transferor either (a) recklessly disregarded indications that it was incorrect, *Duffer v. Royal Dodge, Inc.*, 51 N.C. App. 129, 131, 275 S.E. 2d 206, 208 (1981) (citing *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381 (D. Neb. 1977), *aff'd*, 578 F. 2d 721 (8th Cir. 1978)), or (b) in the exercise of reasonable care, should have known the odometer was incorrect, *Levine v. Parks Chevrolet, Inc.*, 76 N.C. App. 44, 331 S.E. 2d 747 (relying primarily on *Nieto v. Pence*, 578 F. 2d 640 (5th Cir. 1978) and *Tusa v. Omaha Auto Auction, Inc.*, 712 F. 2d 1248 (8th Cir. 1983)), *disc. rev. denied*, 315 N.C. 184, 337 S.E. 2d 858 (1985). The policy behind this statutory standard is explained in *Duffer*, 51 N.C. App. at 132, 275 S.E. 2d at 208:

> The intent of the legislature is to impose an affirmative duty on dealers to detect odometer irregularities. [*Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328 (D. Conn. 1977).]

> Dealer has the duty to state that actual mileage is unknown, even if he lacks actual knowledge that the odometer is incorrect, where in exercise of reasonable care he would have reason to know that the odometer reading is incorrect. *Nieto v. Pence*, 578 F. 2d 640 (5th Cir. 1978).

The language in some cases that discusses the standard of reasonable care applies to proof of constructive knowledge—one way to establish the first element of a case under G.S. Sec. 20-348(a). For example, in *Levine*, the court held that the evidence was sufficient to demonstrate negligence (that the transferor should have known the odometer was inaccurate by nearly 100,000 miles) and, in addition, that the transferor acted with the intent to defraud. The evidence showed that the dealer "had some question as to the verity of the odometer mileage," yet did little to confirm this suspicion. 76 N.C. App. at 51, 331 S.E. 2d at 751. We agree that this, in combination with the other evidence in *Levine*, was sufficient to support liability under G.S. Sec. 20-348(a).

### B

The second element of an action under G.S. Sec. 20-348(a) requires a showing by plaintiff that the transferor acted with the intent to defraud the plaintiff. This element is not required in an

action for injunctive relief against a violator, G.S. Sec. 20-349, or to impose misdemeanor criminal penalties, G.S. Sec. 20-350, although both of these statutes also require proof of knowledge by the transferor. There is no dispute that civil liability with treble damages and attorneys' fees requires proof of intent to defraud.

In order to preserve the integrity of the statute and to prevent dealers from shielding themselves from civil liability by "closing their eyes to the truth," the courts of this State do not require *actual* knowledge to prove "intent to defraud." *Duffer.*

> The approach taken by the great majority of courts is sensible. If a person violates an odometer disclosure requirement with actual knowledge that he is committing a violation, a fact finder can reasonably infer that the violation was committed with an intent to defraud a purchaser. Likewise, if a person lacks knowledge that an odometer disclosure statement is false only because he displays a reckless disregard for the truth, a fact finder can reasonably infer that the violation was committed with an intent to defraud a purchaser. The inference of an intent to defraud is no less compelling when a person lacks actual knowledge of a false odometer statement only by "clos[ing] his eyes to the truth." *Nieto*, 578 F. 2d at 642.

*Tusa*, 712 F. 2d at 1253-54 (discussing federal decisions).

In other words, the fact that a plaintiff establishes the first element by proving constructive knowledge rather than actual knowledge does not preclude a finding that the transferor acted with the "intent to defraud." The plaintiff need only present evidence that the transferor's actions toward determining true mileage were grossly negligent or that the transferor recklessly disregarded indications that the odometer was inaccurate. *See Duffer.* This may be shown, for example, by the failure to comply with other requirements in Article 15, *see Roberts v. Buffaloe*, 43 N.C. App. 368, 258 S.E. 2d 861 (1979) (failure to affix notice that odometer had been replaced, as required by N.C. Gen. Stat. Sec. 20-346 (1983)), or by circumstances indicating that defendant knew or had good reason to suspect that the mileage reading was incorrect and failed to take obvious steps to confirm his suspicion, *see Levine* (The transferor had some actual suspicion that the

McCracken v. Anderson Chevrolet-Olds, Inc.

odometer was wrong, and the odometer read 14,485 while the vehicle obviously had been driven over 100,000 miles.). *See also Tusa v. Omaha Auto Auction, Inc.*, 712 F. 2d 1248 (8th Cir. 1983) (Intent to defraud may be inferred from actual knowledge or reckless disregard for the truth.); *Nieto.*

We reject the proposition that a transferor may be liable for treble damages and attorney fees, under a statute requiring proof of "intent to defraud," upon proof of simple negligence in failing either to ascertain true mileage or to indicate that the mileage is unknown. We recognize that in doubtful situations, it would be easy for a dealer simply to indicate that the true mileage is unknown. Nonetheless, the legislature clearly provided that failure to comply with disclosure requirements *without* the intent to defraud may subject the violator to injunctive and criminal actions, but not to punitive civil actions. *See Lawrence v. Franklin Investment Company*, 468 F. Supp. 499, 502 (D.D.C. 1978).

We cannot delete from the statute the phrase "with intent to defraud." Although knowledge of an incorrect odometer reading may, in some cases, be evidence of gross negligence or recklessness, a mere negligent violation of a disclosure requirement or even a knowing violation cannot support a private cause of action under the statute absent evidence sufficient to demonstrate an intent to defraud. *Accord Hill v. Bergeron Plymouth Chrysler, Inc.*, 456 F. Supp. 417 (E.D. La. 1978); *Hensley v. Lubbock National Bank*, 561 S.W. 2d 885 (Tex. Civ. App. 1978).

C

Once evidence is presented to demonstrate a violation of the rules or that the transferor knowingly provided a false mileage statement, "it must then be determined whether defendants' violations . . . were made with the intent to defraud." *Roberts*, 43 N.C. App. at 371-72, 258 S.E. 2d at 863. The second element, intent to defraud, requires proof of gross negligence or recklessness toward the duty either to provide accurate mileage information or to indicate that it is unknown. This requirement of at least gross negligence or recklessness is consistent with our cases imposing punitive or treble damages only upon a showing of more than simple negligence. *See Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975); *cf.* 36 A.L.R. 3d 125, 226-31 (1971 & 1985 Supp.) (citing

McCracken v. Anderson Chevrolet-Olds, Inc.

cases imposing punitive damages only on proof of more than negligence).

## II

[2] Generally, the jury must weigh the evidence at trial and may draw reasonable inferences therefrom. *See Roberts.* In this case, however, the competent evidence and permissible inferences raise no more than a mere suspicion of gross negligence or recklessness.

Defendant appeals from the denial of its motions for a directed verdict and judgment notwithstanding the verdict. Thus, we consider the evidence in the light most favorable to the plaintiff in determining whether it is sufficient to support a finding of gross negligence or recklessness. *See Duffer; see also Atkins v. White Transportation Company,* 224 N.C. 688, 32 S.E. 2d 209 (1944); *Hefner v. Stafford,* 64 N.C. App. 707, 308 S.E. 2d 93 (1983).

The evidence presented at trial, viewed most favorably to McCracken and with all conflicts resolved in his favor, supports the following relevant findings: The 1981 Oldsmobile was originally purchased from defendant by Mr. Able who used it in his tomato-packing business. Able and his wife owned and operated two similar Oldsmobile diesel cars. Because Mr. Able drove more miles than his wife, they periodically switched cars to keep the mileage on each one below its 12,000 warranty limit for as long as possible during the first year of ownership. Able owned the Oldsmobile for fourteen months and used it in mountainous regions of North Carolina, South Carolina and Tennessee. When Able owned and drove the car, he weighed between 250-260 pounds.

When Able's business failed, defendant repossessed the Oldsmobile, cleaned and serviced it, performed a North Carolina safety inspection and gave it a road test. There were no indications from the car's repair orders, records or physical condition that the odometer had been changed, disconnected or modified. The odometer was working and registered slightly more than 19,000 miles. This is a little higher than average for a fourteen-month period.

On 20 May 1986, plaintiff test-drove the Oldsmobile and noticed no problems. He knew it had been repossessed from Able,

and he called Able to check on the history of the car. On 26 May, he drove the car to Sylva, North Carolina, with defendant's permission, to arrange financing for the car. Upon his return, he purchased the car "as is." Defendant furnished a statement verifying that the mileage on the odometer was correct at slightly over 19,000.

Plaintiff's primary witness was his nephew, Mr. Robinson, who had been selling cars as a secondary line of work for eleven years. Although he had no training, license or professional experience as a mechanic, the court allowed him to give expert opinion testimony on the actual mileage he believed the car had been driven. Robinson had inspected the car and found that the clip for the cruise control cable, which is supposed to keep the cable from vibrating, was detached. The odometer cable was barely screwed in and contained grease, dust and dirt, but it was still working. He had noticed that a big person had used the front seat, and that the brake pedal was worn on the right side. Although the tires that were on the car were not original issue, Robinson testified that a tire brought to the courtroom, which was similar to the tires on the car, had 25,000 to 30,000 miles on it. The front and rear parts of the car had rock chips and needed to be touched up; this indicated to Robinson that the car either had been driven many miles or had been driven on gravel roads.

Robinson also testified that the brakes were worn out at that time, but that the driving Able did in mountainous regions might have' placed 25,000 to 30,000 more miles worth of wear on the brakes than ordinary driving would have done. Other evidence showed that brake systems on diesel cars such as this Oldsmobile place more wear on brakes than brake systems in ordinary gasoline engine cars; and diesel car brakes last 10,000 to 60,000 miles, often nearer the lower end when owners "ride the brakes." Nonetheless, Robinson testified that, in his opinion, the car had 50,000 miles on it.

On cross-examination, Robinson testified that it was common for owners of cars that were about to be repossessed to replace the tires with older ones. He also stated that cruise control clips can become detached by themselves (resulting from vibrations) and that diesel engines vibrate more than gasoline engines. One purpose of the cable clips is to prevent cables from becoming un-

screwed as a result of ordinary vibrations, and if they do become unscrewed, grease and dirt would naturally accumulate in the cable.

McCracken introduced as evidence a series of seven repair orders with odometer readings from 15 April 1981 through 5 May 1982 demonstrating that until June 1981 and after September 1981 the car was driven an average of at least several hundred miles each month. The readings showed that from 8 June 1981 to 9 September 1981 the odometer advanced only 278 miles, from 9,533 to 9,811. McCracken's theory is that the odometer must have been disconnected sometime during this period. We believe this constitutes pure speculation. The only evidence as to why the mileage did not increase during these months was that Able simply used the other Oldsmobile he owned, and avoided using the 1981 Oldsmobile involved in this case in order to keep the mileage below the 12,000-mile warranty limit, at least while the car was less than one year old and the other Oldsmobile still had some miles to go within its 12,000-mile warranty limit.

McCracken apparently argued that the grease and dirt in the odometer cable; the loose clip; the worn brake pedal, brakes, and tires; and the paint chips—all taken together prove that the car had been driven more than the 19,000 miles indicated on the odometer and that, therefore, defendant knowingly provided the false mileage reading with the intent to defraud him. We doubt that the evidence was sufficient to prove the car actually had been driven more than the mileage indicated on the odometer. It is questionable whether the evidence would have been sufficient to go to the jury even on a negligence standard. We can find no evidence that defendant was grossly negligent toward or recklessly disregarded indications that the odometer reading was inaccurate, or that defendant in any other way demonstrated the intent to defraud. *See Hill.*

In the cases cited in Part I, *supra,* there was evidence that the defendants either had actual knowledge of and blatantly disregarded false mileage readings, *see, e.g., Duffer; Roberts;* or disregarded extremely obvious indications that the mileage readings were off by substantial amounts, *see, e.g., Levine* (inaccurate by as much as 100,000 miles); *Nieto* (odometer reading was 14,736 on ten-year-old truck). *See Duval* (court did not determine proper

N.C. State Bar v. Whitted

standard because evidence showed either actual knowledge or reckless disregard); *see also Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F. Supp. 889 (W.D. Pa. 1977) (actual mileage 100,000 more than odometer reading). In the case at bar, there is no more than a suspicion that defendant was grossly negligent or recklessly disregarded any indications that the car had been driven more than 19,000 miles in fourteen months.

For the reasons stated above, the judgment of the trial court is reversed. We need not address the other assignments of error.

Reversed.

Judges JOHNSON and COZORT concur.