## HATCH WHITFIELD *v.* MARGARET WHITFIELD.

1. PERSONAL PROPERTY : EVIDENCE OF VALUE.—A witness may, from his own knowledge, testify as to his opinion of the value of personal property.
2. PERSONAL PROPERTY : MEASURE OF DAMAGES FOR TAKING, DETAINING, AND CONVERSION WHERE NO FRAUD, OPPRESSION, MALICE OR WILFUL WRONG.—In actions for the taking, detention, or conversion of personal property, where no question of fraud, malice, oppression, or wilful wrong intervenes, the measure of damages is the value of the property at the time of the taking, detention, or conversion, with interest to the time of trial.
3. PERSONAL PROPERTY : MEASURE OF DAMAGES, WHERE FRAUD, MALICE, OPPRESSION, OR WILFUL WRONG IN TAKING, DETAINING OR CONVERTING.—Where the

Whitfield *v.* Whitfield.

taking, detention or conversion of personal property is attended by circumstances of malice, fraud, oppression, or wilful wrong, the measure of damages is a matter to be determined by the jury from the evidence. This rule embraces cases where the detention of the property was wilful and injurious, though the taking may have been in good faith, or where the taking and subsequent disposition of the property, at a greater price than the market value, were in ignorance of the rights of the true owner, and the party thus disposing of the property seeks to retain the difference as a speculation resulting from his original unintentional wrong, or where the property has some peculiar value to the owner, and is wilfully withheld, or he has been deprived thereof by the wrongful act of the party in possession.

4. PERSONAL PROPERTY: EVIDENCE: ASSESSOR'S BOOKS.—It is admissible in a contest as to the title to personal property between the father and representatives of the son, to show by the assessor's books, that, during the time the property was in the possession of the son, it was assessed, not as the property of the son, but of the father.

5. PERSONAL PROPERTY: GIFT OF, WHEN PRESUMED AS BETWEEN PARENT AND CHILD.—A delivery of personal property by a parent to a child, at the time of, or after marriage, will be regarded as a gift or advancement in the absence of explanatory circumstances.

6. REPLEVIN: PRACTICE, VERDICT, AND JUDGMENT: CASE IN JUDGMENT.—In an action of replevin, when the verdict is for the plaintiff, it should be for each specific article adjudged to the plaintiff, and the value of each. In this cause, the verdict of the jury stated each specific article of property to which they found the plaintiff had title, and the separate value of each. The judgment was for the recovery of each article, and *the aggregate value of all.* Held—That the judgment did not follow the verdict, and was erroneous.

7. PERSONAL PROPERTY: EVIDENCE: DECLARATIONS ADMISSIBLE IN DISPARAGEMENT OF, BUT NOT TO SHOW TITLE.—In actions involving title to personal property, the declarations of the party, whose representatives are suing, are admissible in disparagement of title, but inadmissible to show title.

ERROR to the Circuit Court of Monroe county. Hon. W. H. Kilpatrick, judge.

At the May Term, 1863, Margaret Whitfield, administratrix of Needham A. Whitfield, instituted her action of detinue to recover from Hatch Whitfield the following property: slaves Jack, and Lucy his wife, and their four children, Georgiana, Julia, Ben, and Daniel; Barney, and Sarah his wife; two mules, one bay mare, one yoke of oxen, one ox-wagon, six head of cattle, nineteen head of hogs.

Hatch Whitfield pleaded the general issue of *non detinet* to the action.

23

Catharine Westbrook, a witness for plaintiff in the court below, testified that—She knew slaves Jack and Lucy, in 1852 ; that they were on the plantation of Needham A. Whitfield; that Margaret Whitfield was married to said Needham A. in the year 1852, month of February, and went to housekeeping in March thereafter. Saw Barney and Sarah on the plantation of Needham A. Whitfield in 1853. That all of said slaves remained on the place where Needham A. Whitfield lived, from the period mentioned, and under his possession and control, until the year 1859, when Barney and his wife were taken away by Hatch Whitfield to make a crop with said Needham, and they were never brought back. That Jack, and wife and children, were taken away by young Watkins, grandson of Hatch Whitfield, in 1862. Recollects to have seen the bay mare on Needham A. Whitfield's place ; knows nothing of the other property. Is sister of Margaret Westbrook.

Samuel Westbrook testified to same facts. Also, that he had seen the oxen, cattle, hogs, and wagon, claimed by Margaret Westbrook as administratrix, on the place where Needham A. Whitfield lived, in 1856 and 1857, and that he exercised acts of ownership and control over them. Brother of plaintiff.

J. J. Shell testified that—He knew the slaves in controversy. Had seen Jack, wife and children, on Needham A. Whitfield's place, in 1856, and, there they remained until 1862. He exercised acts of ownership over them. Saw on the place an ox-wagon. Afterwards saw Jack, wife and children, ox-wagon, oxen, hogs and cattle, in the possession of defendant, Hatch Whitfield.

J. T. Cason testified that—He knew the value of the property in controversy in this suit at the time it was said to have been taken out of the possession of plaintiff. Defendant objected to testimony as to value at time of taking, but insisted that testimony should be restricted to value at time of trial. Objection overruled.

Witness proved value of property at time of taking, and the value of Confederate money as compared with gold.

Margaret Whitfield, plaintiff, and widow of Needham A. Whitfield, introduced as witness. Defendant objected to witness, be-

cause wife of Needham A. Whitfield. Objection overruled, and witness permitted to testify as to all matters which came to her knowledge after husband's death.

She testified that her husband died in August, 1862; was in the army at the time, and had been for fourteen months previous. That Jack and family went into possession of her husband in 1856, shortly after their marriage, and was taken away in December, 1862. That Barney and wife went into her husband's possession in 1857, and remained in his possession until 1859. That he exercised acts of ownership over them. That the other property claimed was the property of her husband, and was taken out of her possession, except Barney and wife, after death of her husband, by her father-in-law, Hatch Whitfield. Barney was taken up to the place of Hatch Whitfield by Needham A. Whitfield to make a crop in partnership, and never brought back.

Peter G. Bryan testified that—In 1859, Needham A. Whitfield had an ox-wagon at his shop to be repaired; that, after the death of Needham A. Whitfield, he mentioned the account to Hatch Whitfield; he refused to pay, saying that he would have nothing to do with it.

William Mullinax testified that—He knew the slaves in controversy; they were in the possession of Needham A. Whitfield in 1852, 1853, 1854, 1855; that he hired said slaves of Needham A. Whitfield, and paid him for the hire.

Testimony for defendant, Hatch Whitfield.

W. A. Stephens,—That in 1861 he was riding a horse belonging to Hatch Whitfield, and went to where Needham A. Whitfield was digging a ditch; Whitfield said it was a fine horse, and would have been his if he had acted right; he said that none of the slaves in his possession belonged to him; that his father would give him nothing, because he would drink it up. Defendant offered to prove the character of Needham A. Whitfield, as a spendthrift and drunkard. Objected to, and objection sustained. That witness, as the agent of Hatch Whitfield, and while in his service, in 1861, furnished shoes and clothing to the slaves in controversy.

Defendant offered to introduce the assessor's books of the county of Monroe, for the purpose of showing that Needham A. Whitfield had never given in the slaves in controversy as his property, from 1852 to the time of trial. Plaintiff objected, objection sustained.

Defendant then read fi. fas. against Needham A. Whitfield, returned by the sheriff " No property," to show that he was insolvent for many years, and owned no property liable to execution.

J. H. Anderson testified that,—In 1860 he held sundry executions against Needham A. Whitfield, and called upon him to settle, and that he told him he had no property out of which the money could be made, and that he returned the executions *nulla bona.*

Defendant offered to show that the title to the land upon which Needham A. Whitfield lived was in defendant. Objected to, and objection sustained.

Wiley Howell testified that,—He was present at a sale by the sheriff in 1858, of the property of Needham A. Whitfield. That the stock in controversy was sold, and purchased by Hatch Whitfield. That in 1859 Needham A. Whitfield asked him to intercede with his father to let him have slaves Barney and wife.

Lucy Howell—Is the daughter of defendant. That when Needham A. Whitfield married, he went to reside on a place which was in the possession of a younger brother. That the slaves in controversy were on the place, and in the possession of the brother. That she had heard Needham A. Whitfield say repeatedly that he owned no property, and that he did not look upon the property on the place as his.

Plaintiff reintroduced Margaret Whitfield, who testified that, —Shortly after her marriage with Needham A. Whitfield, Hatch Whitfield came to their house, and told her husband that he would give him the slaves Jack and family, and if he did well he would do more for him next year. That the next year Barney and wife were sent to them, and all remained in her husband's possession until taken away as stated.

R. G. Miller—That he was at the house of Needham A. Whitfield. He said he had four hands his father had given him. Defendant objected, objection overruled.

This was all the testimony. The charges to the jury are contained in the opinion of the court, except the fifth, which is in this language: "That the term creditor, as used in the statute. of frauds, means a judgment-creditor contesting the right of property in a court of justice."

The jury returned a verdict for plaintiff for all the property claimed, and found the value of each specific article, and the value of the hire, "making in the aggregate the sum of $6,925. It is therefore considered by the court, that the plaintiff recover of the defendant the property above enumerated, with hire for the same as stated, if to be had, and if not to be had the sum by the jury assessed, in the aggregate the sum of $6,925, together with the costs in this behalf expended, and for which an execution may issue."

A motion for a new trial made, overruled, and a writ of error sued out returnable to this court.

*Thomas H. Davis* and *Joel M. Acker*, for plaintiff in error.

*Lock E. Houston*, for defendant in error.

HARRIS, J., delivered the opinion of the court.

The defendant in error filed his action of detinue in the court below, to recover the possession of personal property alleged to belong to the estate of her intestate, and to be in the possession of the plaintiff in error. There was a verdict for the defendant in error on the issue joined, a motion for a new trial, and bill of exceptions, on the refusal thereof, and the cause is brought to this court by writ of error.

Numerous errors are assigned, which we will notice in their order.

The first is that the court erred in permitting the witness Cason to testify as to the value of the property in controversy.

The ground upon which this assignment is urged is not presented by this record.

The record does not show that Cason testified as to the value of the property in controversy as an *expert*, upon a description of the property communicated to him by others, but so far as the record disclosed he testified as of his own knowledge. There seems to be no ground, therefore, for this assignment.

The second cause of error is, that the court permitted the witness, Cason, to prove the value of the property at the time of taking, instead of at the time of trial.

The question for our consideration on this assignment is: What is the rule of damages in actions of this character—the value at the time of taking or conversion, the value at the time of trial, or the highest value at any intermediate time?

It is to be observed, that, as to the measure of damages, there is a strong tendency, by legislative action as well as judicial decisions, everywhere, to abolish the distinctions resulting from the forms of action invented to recover the possession of personal property, or damages for its conversion, or detention, or wrongful appropriation, or for the breach of contract in relation thereto, and to adopt general rules upon the subject of damages susceptible of universal application.    Hence, the text-writers, as well as the late decisions, in discussing this rule of damages, seem to disregard the form of action, whether trover, detinue, trespass or replevin, and to agree, no matter what the form of remedy, that the plaintiff, where the property is not restored upon proof of his right, is entitled to recover full compensation or indemnity for the wrong or injury complained of.

Mr. Sedgewick, in his work on the ·measure of damages, page 521, says the true rule would appear to be to make the measure of damages depend not on the form of action, but on its nature.

Mr. Parsons, in the third volume of his work on Contracts, fifth edition, page 206, says: " We have considered a similar question—as to the time when the value of property is to be taken—repeatedly, because different principles have been applied to it in different actions.    But we doubt if this be wise or just.    If we adhere to the simple rule of compensation, we should say, that in every action to recover damages for the wrongful detention of personal property, the plaintiff should

recover full compensation, for the loss of all that he might fairly have gained, during the whole period of defendant's misappropriation; and the defendant should be supposed to have made the wrongful act as profitable to himself as the market at any time permitted—excepting, perhaps, accidental and monetary inflations—and should be compelled to give over this profit to the plaintiff. And it will be seen in our notes, that we have recent authority for this general rule," citing *Suydam* v. *Jenkins*, 3 Sandf. R., page 624, and *Dunlop* v. *Higgins*, 1 H. Lds. Cases, 381, 403, decided by Lord Cottenham.

In the case of *Suydam* v. *Jenkins*, J. Duer says, that the principles which are manifest, just, and universal in their application, are, that the owner to whom compensation is due, must be fully indemnified; and that the wrong-doer must not be permitted to derive any benefit or advantage whatever, from his wrongful act. * * * As the actual loss to the owner is the same, whatever may be the form of the action in which reparation is sought, the sum due to him for its compensation must be the same, whether he be the plaintiff in trespass, or trover, or the defendant in replevin. 3 Sandf., page 614, Superior Court of the City of New York, decided in 1850.

The case before Justice Duer was an action of trover. In reviewing some of the cases on this subject, where the form of action was debt on bond, he says: "We lay no stress, however, on this distinction, but admit, that if the rule which was followed in estimating damages was correct and just in itself, no difference in the form of action should be allowed to prevent its application. The rule was adopted as a rule of indemnity, and when the right to an indemnity exists, its measure cannot reasonably be made to depend upon the form of the remedy." And in the conclusion of his opinion he says, "that the arbitrary distinctions which were permitted to flow from a difference in the forms of action are now abolished;" alluding, doubtless, to the statutes of New York on this subject.

In this State a like policy is indicated by our legislation, to regard rather the substance and nature of the grievance com-

plained of, than the form of remedy adopted for its redress; and such is the tendency of decisions in this State.

Mr. Sedgewick, in his work already cited, after speaking of the confusion existing in relation to the measure of damages in the action of trover, says : " An effort might be made to render the rule of damages in trover and trespass identical, without reference to the remedy resorted to, and dependent only on the character of the defendant's acts.     *     *     *     It seems, that were the thing to be settled on principle, the rule might be thus laid down.     When the original conversion is wholly unaccompanied by malice, or where it is not wilful, the rule of damages is a pure question of law, on which the jury is to be controlled by the court.     In these cases the jury should be directed to give the value at the time of conversion, with interest, unless by that act the plaintiff has been prevented from some particular use of the property of which the defendant had knowledge.     In that case, if such use would have increased its value to the plaintiff, the jury should give the highest value of the chattel at any time between the conversion and the trial, with interest from the time of highest value to the trial, by way of damages for the detention.     *     *     *     If the *taking* be wilful *     *     *     the true rule would appear to be, to make the measure of damages depend, not on the form, but on the nature of the action."     See pages 519, 520, and 521.

Mr. Greenleaf says : " In trover, the value of the property at the time of conversion, with interest, is ordinarily the measure of damages, when the property has not been restored to, and accepted by, the plaintiff.     It has been further held, that the jury may, in their discretion, find the value at a subsequent time.     Greenleaf's Evidence, 2nd volume, section 276.

In this State the precise question seems to have received no consideration, since the cases of *Hinds* v. *Terry*, Walk. R. page 83, and *Texada* v. *Camp.* Id., page 150.     In these cases, it was held that the value of the property at the time of the conversion, and its yearly value, or interest from that date, is the measure of damages.

And this seems to be the ancient rule in England, *where*

*the value remains the same,* as money in a bag, and there is no wilful tort.

In the case of *Fisher* v. *Prince,* 3 Burr, page 1363, on a rule to stay proceedings in an action of trover, upon the defendant delivering up the property in controversy and paying all costs, Lord Mansfield states the rule thus: that when trover is brought for a specific chattel of an ascertained quantity and quality, and unattended with any circumstances that can enhance the damages above the real value, but that its real and ascertained value must be the sole measure of damages, then the specific thing demanded may be brought into court. Where there is uncertainty, either in the quantity or quality of the thing demanded, or there is any tort accompanying that may enhance the damages above the real value of the thing, and there is no rule whereby to estimate the additional value, then it shall not be brought in, and the court will not stay proceedings, on delivery of the thing sued for, but will allow the plaintiff to proceed for special damages. The reason holds to every other case, he adds, where the thing clearly remains of the same value, yet the jury may give damages for the detention.

So in *Whitten and Wife, adm'r of Hunt,* v. *Fuller,* 2 W. Black. R., page 902, C. J. De Grey, delivering the opinion of the whole court, held that in trover, if the value of the thing be uncertain, or the plaintiff insists upon going for special damages, the court will not stay proceedings on delivery of the thing sued for and costs.

And so it was held in an anonymous case in 1 Strange R., page 142, where it is said: In trover for money, the court gave leave to bring the whole money declared for into court, but said, they could do it only in this case, and not in trover for goods. *Cooke* v. *Holgate,* Barnes, page 281, and *Royden* v. *Batty,* Ib. page 284, are cited in a note in the case of *Whitten and Wife* v. *Fuller,* to the same point. 2 W. Black. R., page 902.

In the case of *Mercer* v. *Jones,* 3 Camp. 476, Lord Ellenborough applied this rule of the value at the time of conversion

and interest, to an action of trover for bills of exchange. But in *Greening* v. *Wilkinson*, 1 Com. & Payne, page 625, where trover was brought for East India Company warrants for cotton, which had risen in value from sixpence per pound at the time of conversion, to tenpence-halfpenny, Abbott, C. J. (Lord Tenterden) pronounced the case of *Mercer* v. *Jones*, "hardly law," and held that the amount of damage is for the jury, who are not limited to the price on the day of conversion, but may find the value at that time, or any subsequent time, in their discretion, because the plaintiff might have had a good opportunity of selling the goods if they had not been detained.

In· *Shepherd's exrs.* v. *Johnson*, 2 East, 211 (1 East, 430, 2 Amer. ed. by Wharton), in a case of breach of engagement to deliver stock, Gross, J., said, the true measure of damages in all these cases is, that which will completely indemnify the plaintiff for the breach of the engagement. The proof in this case showed that at the time of trial the stock was greatly enhanced in value, and it was held, that indemnity in such case was the highest value as it stood at the time of trial; and this appears to be the rule held by Lord Eldon in the case of *Payne* v. *Burke*, decided in 1799, and cited by Mr. East in a note to the case above quoted.

In the case of *McArthur* v. *Seaforth*, 2 Saunt. 257, which was a writ of inquiry to assess damages on a bond conditioned for replacing stock, Lord Mansfield held, that the obligee was not entitled to special damages for a profit he *might* have made if it had been sooner replaced, unless he shows that he actually would have made it; and the measure of damages in this case is stated to be the price of the stock on the day when it ought to have been replaced, or the price at the day of trial, at the option of plaintiff, but not the highest price at any intermediate day.

It is to be remarked, however, that this case seems, in reference to "the highest price at any intermediate day," to rest on its peculiar facts. Lord Mansfield, in speaking of the claim for damages, says: "All his (plaintiff's) letters require nothing more than to be paid off at par. No application is made to the

defendant at the time when the reduced annuities are at the highest price; the plaintiff does not say pay me now, for I can invest it advantageously, and I shall call on you to pay the difference if I do not. * * * He lets the time pass by, and he afterwards states what he could have done."

In *Downes* v. *Back*, 1 Stark. Cas., page 318, Lord Ellenborough allowed the value on the day of trial. 2 Eng. Com. Law. R., page 407.

In *Harrison* v. *Harrison*, 1 Com. & Payne, page 412, which was a writ of inquiry to assess damages on a bond to replace stock, the question was as to the day on which the price of stock should be taken, in order to calculate the amount of damages. C. J. Best said: "I think the fair rule is to take the damages at the price of yesterday or to-day. * * * Justice is not done if you do not place the plaintiff in the same situation in which he would have been if the stock had been replaced at the stipulated time."

The argument for the plaintiff was, that the object of the bond being to insure the plaintiff the *same quantity of stock*, it was necessary that he should recover as much money from the defendant as would secure the purchase of the stock at the time of such recovery, while the defendant insisted that its value, at the time of the breach, was the just rule of damages.

C. J. Best, agreeing with the former view, directed damages according to the price of the day previous to the execution of the writ of inquiry.

In *Dunlop* v. *Higgins*, 1 H. Lds. Cas. 381, 402, cited by Mr. Parsons in his Law of Contracts, vol. 3, page 206, note (*l*), Lord Chancellor Cottenham is reported to have held, that the increased value, or the profit that would have been received if the party had performed his contract, is the true measure of damages in an action for a breach of a promise to deliver specific chattels on a given day.

Mr. Sedgewick, page 502, speaking of the rule in England, says, if we adhere to the analogy of stock contracts as decided there, when the value of the chattels is fluctuating, the rule ought to be the highest value between the conversion and

the trial. And this, he adds, appears to be the rule in New York.

In the American courts the cases are by no means uniform.

In New York, J. Sutherland, in the case of *West* v. *Wenthworth & Beach*, 3 Cowen's R., page 82, held—That in assumpsit on a note payable in specific chattels, the measure of damages is the highest market price at any time between the notes falling due and the time of trial. He says that in trover, if the chattel be not of a fixed and determinate value, its worth at the time of conversion is not the rule of damages; but they may be enhanced according to the increased value of the chattel subsequent to that time: referring to the cases in 3 Burr and 2 W. Black., already cited.

In the case of *Clark* v. *Pinney*, 7 Cowen, page 681, this question was again considered, and the opinion delivered by the same judge. He says, in the ordinary case of the sale and delivery of a personal chattel, when the price is *not paid at the time*, but is to be paid on delivery, the criterion of damages is the price of the article at the time it was to have been delivered. He was not aware that this principle had ever been contested: and the reason is that the plaintiff, having his money, could at all times after the breach purchase the chattels for himself.

But if the price be paid at the date of the contract, or at any time anterior to the day of delivery, and the vendor fails to deliver, the vendee is not confined to the value of the article on the day it should have been delivered. He reviews a number of English and American cases, and holds this to be the true rule, upon principle as well as authority.

The correctness of these decisions is questioned by J. Duer in the case of *Suydam* v. *Jenkins*, 3 Sandf. R., page 614, in the Superior Court of the City of New York, in a very elaborate opinion. But in the subsequent case of *Wilson* v. *Mathews*, in the Supreme Court of New York, 24 Barbour, page 295, in 1857, J. Davies, delivering the opinion of the majority of the court, affirmed the decisions in 3 and 7 Cowen, and holds that the highest value, at any time between the act of conversion and the day of trial, is the proper rule of damages. And Mr. Sedgewick,

as we have already seen, understands it to be so settled in New York.

And this is the rule in Alabama. *Tatum* v. *Manning,* 9 Ala. 144 ; *Lee* v. *Matthews,* 10 Ala. 682; *Ewing* v. *Blount,* 20 Ala. 994.

Such is also the rule in South Carolina. *Kid* v. *Mitchell,* 1 Nott & McC., page 334.

And in Iowa. *Cameron* v. *Folsom,* 2 Iowa, 101.

In Georgia, the measure of damages is the value of the property at the time of conversion and interest, or hire. *Schley* v. *Lyon,* 6 Georg. R., page 53; *Dorsett* v. *Frith,* 25 Georg., page 537.

The same rule prevails in Illinois. *Keagy* v. *White,* 12 Ill. 101 ; *Otter* v. *Williams,* 21 Ill., page 118.

This is also the rule in Missouri. *Walker* v. *Borland,* 6 Missouri R., page 289.

Also in Massachusetts. 1 Met. 179 ; 19 Pickering, 3.

And in Maine. *Hayden* v. *Bartlett,* 35 Maine, page 203.

In Connecticut, after much diversity of decision, this rule seems to be adopted in the latest cases. *Hurd* v. *Hubbell,* 26 Conn., page 389 ; *Dibble* v. *Morris,* 26 Conn., page 416.

In Pennsylvania, the rule of damages is made to depend on the nature of the injury complained of, whether the action be replevin, trover, or trespass. In the absence of any circumstances of aggravation, where the defendant retains the property, the measure of damages is, ordinarily, the value of the property at the time of taking, and damages for the detention, which is usually interest on the value from the time of taking. But when the taking or detention, or both, are attended with circumstances of fraud, oppression or malice, the legal rule of mere compensation is abandoned, and the jury are allowed to give such damages as, in their judgment, the nature of the grievance, as exhibited by the evidence, demands. The cases in Pennsylvania, holding this doctrine, are cited by J. Rogers in the case of *McDonald* v. *Scaife,* 11 Penn. R. 381, and these rules clearly stated.

In California, 14 Cal. R., page 553, in an action for taking

and detaining personal property, J. Cope (with the concurrence of C. J. Field) very clearly and forcibly states the same views, as the result of their investigation. He says : "Our understanding of the law is, that the term compensation, when applied to cases of this character, has a fixed and definite legal significacation, and refers solely to the injury *done to the property* taken, and not to any collateral or consequential damages resulting to the owner, by reason of the trespass.    These can be considered only in cases more or less aggravated, when circumstances are shown which justify a departure from the strict rule of compensation.

Where no question of fraud, malice, or oppression intervenes, the law limits the relief to *compensation*, as that term is legally understood ; and in such cases the measure of relief is purely a matter of law.    But where the trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship or oppression, the rule of *compensation* is not adhered to, and the measure and amount of damages are matters for the jury alone."

The same principles are stated by the Supreme Court of the U. S. in the case of *Conard* v. *The Pacific Insurance Company*, 6 Peters, page 262.    Indeed, the language of the Circuit Judge in this case, whose opinion was approved in the Supreme Court, seems to have been adopted, substantially, by the California court in the case above cited.    From the examination which we have been able to give to this question, we think that it may be safely affirmed—

1. That in actions for taking and detaining personal property, where no question of fraud, malice, oppression (or wilful wrong, either in the taking, or detention) intervenes, the measure of damages is the value of the property at the time of the taking, or conversion, or illegal detention, with interest thereon to the time of trial ; and this is a rule of law, to be decided by the court.

2. That where the trespass, detention, or conversion, is attended by circumstances of malice, fraud, oppression, or

wilful wrong, the law abandons the rule of compensation, in a legal sense, and the measure of damages becomes a matter for the consideration of the jury, guided by the evidence before them.

That under the first rule stated, may be embraced all cases where the defendant, neither in the taking nor in the detention or disposition of the property, has been guilty of any wilful wrong, but acts in good faith, and with no intent injuriously to affect plaintiff's rights.

That under the second rule above stated, may be embraced— 1, all cases where the original act was wilful and wrongful; 2, or where the original act was *bonâ fide*, but the subsequent detention, sale, or other disposition of the property, after a knowledge of plaintiff's claim, was wilful and injurious; 3, or where the original act, and the subsequent disposition of the property for a greater price than its market value, at the time of the original taking, were all in ignorance of the plaintiff's rights, but the defendant, seeks to retain the difference, as a speculation resulting from his original, unintentional wrong; 4, or where the property in controversy has some peculiar value to the plaintiff, and is wilfully withheld from the rightful owner, or he has been deprived thereof by the wilful and wrongful act of the defendant. In all such cases, it is the peculiar province of the jury to find such damages, according to the convictions of their own understandings, as are consistent with right; not as matter of law, under the control and direction of the court, but as a rule of remedial justice, resting in their discretion.

These are the general principles regulating damages in the actions of trespass, trover, detinue, and replevin; but there are some distinctions in the form of the verdict and judgment which it is material to observe. In trespass and trover, which lie for the recovery of damages alone, for injuries to personal property, and not for the specific recovery of the property itself, the rules above stated are of obvious application. But in detinue and replevin, where the recovery of the specific property, as well as damages for its caption or detention, or both,

are sought, while these principles are still applicable, the form of the verdict and judgment are materially different. The verdict, in detinue, if for the plaintiff, is for each specific article, or parcel, with its separate value at the time of the illegal taking or detention, with damages also for the unintentional injury, or the wilful or malicious wrong, according to the principles above stated, and the judgment is for the specific property, if to be had, and if not, for its alternative value, and also, for the damages assessed by the jury, and costs. So in the action of replevin, our statute regulates the verdict and judgment to compel the restoration of the property or its alternative value, and also, the payment of such damages for the wrongful taking or detention, as shall have been assessed by the jury, upon the same principles.

In the case before us, the error assigned is, that the court permitted the witness Cason to prove the value of the property *at the time of taking.* We have seen that, in the absence of fraud, malice, or oppression, this is the true rule; and the defendant below cannot complain, that the more stringent rule of damages, enhanced·by the existence of aggravating circumstances, was not.applied to his case. The instruction as given, was the most favorable to him that the rules of law would permit; and not being prejudicial to him, he cannot complain.

The third, fourth, fifth and seventh assignments relate to the exclusion of the testimony of Mrs. Whitfield, and of witness Stevens, and of certain deeds offered in evidence. This testimony was all irrelevant, and properly excluded.

The sixth assignment relates to the exclusion of the tax-collector's and assessor's books, offered to show that the plaintiff intestate had never given in the property in controversy as his property, to the assessor of taxes, during the period it was alleged to be in his possession and owned by him; this evidence was clearly competent, and should have been admitted.

The eighth assignment is, that the court erred in giving the instruction asked by plaintiff, to the effect that a delivery of personal property by a parent to a child, on after marriage,

will be regarded as a gift, or advancement, in the absence of any qualification.

We think there was no error in giving this instruction to the jury. Its application depended altogether on the view of the testimony which they might adopt. If they believed, from the evidence, that plaintiff intestate did not derive his possession of the property in dispute from his father, Hatch Whitfield, on or after the time of his marriage, then it could have no application.

The fifth instruction asked by the defendant below, as to the construction of the term "*creditor*" in the statute of frauds, was properly refused.

The tenth assignment relates to the judgment rendered, which is as follows, after reciting the verdict finding the separate values of the property: "It is therefore considered by the court that the plaintiff recover of the defendant the property above enumerated, with hire for the same as stated, if to be had, and if not to be had, the sum by the jury assessed in *the aggregate*—the sum of $6,925, with the costs," etc.

This judgment was erroneous. It should have followed the verdict, requiring the delivery of each specific article or its alternative value; so that, upon delivery of any one or more of the articles, the defendant would be thereby discharged from the payment of the value of the articles so delivered. Under this judgment the defendant is required to deliver the whole property, or pay the whole sum "in the aggregate."

The twelfth assignment is, that the court permitted witness Miller to testify to the declarations of the intestate, in his life-time, showing his title to the property in dispute.

This was error. His declarations in disparagement· of his title would have been admissible for defendant; but declarations in his own favor, to establish title in himself, are not admissible for plaintiff below.

For these errors, the judgment will be reversed, cause remanded, and a *venire de novo* awarded.