## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00052-SCT

*REGENCY NISSAN, INC.*

*v.*

*WILLIAM H. JENKINS AND EMBERS WHOLESALE AUTOMOBILES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/1/91 |
| TRIAL JUDGE: | HON. JAMES A. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELBERT E. HALEY, JR. |
| ATTORNEYS FOR APPELLEES: | C. VICTOR WELSH, III |
| | WILLIAM W. ABBOTT, JR. |
| | CURTIS G. KIRBY, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED IN PART - 8/22/96 |
| MOTION FOR REHEARING FILED: | 11/9/95 |
| MANDATE ISSUED: | 8/29/96 |

### EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. The matter before the court involves a judgment in the amount of $15,140.82, representing treble damages under the Odometer Disclosure Act, 15 U.S.C. §1989 (1988), for alleged fraudulent representations by the defendant, appellant herein, Regency Nissan, Inc. (Regency), the retail used car dealer who sold a truck to Jenkins. We reject Regency's contention that it was entitled to a directed verdict and the other claimed trial errors in evidentiary and instruction rulings and affirm.

### I.

¶2. On April 11, 1989, William Jenkins traveled from his home in Philadelphia, Mississippi to Jackson, Mississippi in his 1979 Chevrolet pick-up truck and visited Regency, a retail car dealership, where he became interested in a 1987 Dodge Dakota truck with an odometer reading of 51,236

miles. Jenkins noticed that the vehicle had a broken windshield, broken radio, a missing headlight and no inspection sticker. Regency promised to fix those problems if Jenkins bought the truck. With that assurance, Jenkins paid $8,546.94 for the Dakota, with the assurance that the odometer reading was accurate. Although Jenkins objected to taking the truck without the repairs completed and without an inspection sticker attached, he agreed to purchase the Dodge truck on the representation of the Regency salesperson that he already had a buyer for Jenkins's own Chevrolet truck.

¶3. After buying the truck, Jenkins observed that the oil change sticker in the frame of the passenger door which indicated an oil change on March 7, 1989 and mileage of 90,171 miles. Additional problems allegedly arose with the truck, which indicated to Jenkins that the odometer reading was inaccurate and that major defects existed with the vehicle, including such items as the oil pump, pistons, rod bearing, and the camshaft. The motor required an overhaul and the emergency brakes and speedometer cable, which was dragging on the ground, were repaired. There was evidence that the original passenger door had been cut off, a new door welded onto the frame, and the replacement door painted the same color as the truck. The truck had three different brands of tires, all requiring replacement; it also required a front-end realignment and two transmission repairs.

¶4. On June 12, 1989, Jenkins filed suit in the First Judicial District of Hinds County against Regency, alleging that he had purchased the Dodge pick-up truck with a fraudulent odometer reading. He requested relief under a federal act, the civil enforcement provision of the Odometer Disclosure Subchapter of the Motor Vehicle Information and Costs Saving Act, 15 U.S.C. §1989 (1988). [1]

¶5. In response to this action, Regency filed an answer, counterclaim, and third-party claim. In its counterclaim, Regency alleged that Jenkins's action was frivolous and that the complaint violated the Mississippi Litigation Accountability Act of 1988, Miss. Code Ann. § 11-51-1 (Supp. 1988). The third-party Complaint named as the third-party defendant Embers Wholesale Automobiles, Inc., (Embers), the wholesaler from whom Regency had purchased the truck. In turn, Embers filed another third-party complaint against others from whom they had purchased the truck. These additional third-party defendants were Paul Baugh d/b/a Star Motors (Star), and Frank G. Weaver and Harry Schermer d/b/a Hwy 49 Motors (Hwy 49). Regency, in turn, also filed a third-party complaint against Star and Hwy 49. The initial owner of the truck was Frank G. Weaver, another third-party defendant. Embers also sought indemnity from these additional defendants on the basis of their prior ownership of the truck.

¶6. After all claims and responsive pleadings were filed in trial court, the following parties appeared in the action. The parties are listed in descending order of their ownership of the 1987 Dodge Dakota pick up truck:

> (1) Plaintiff/Appellee - William H. Jenkins;

> (2) Defendant/Appellant - Regency Nissan, Inc., who answered, filed a third-party complaint, and appeared at trial;

> (3) Third-party defendant/Appellee - Embers Wholesale Automobiles, Inc., who answered, filed a third-party complaint, and appeared at trial;

(4) Third-part defendant - Harry Schermer, d/b/a Highway 49 Motors, who answered, appeared at trial pro se, but did not present evidence, question witnesses or argue or appeal;

(5) Third-party defendant - Paul Baugh d/b/a Star Motors, who did not answer or appear at trial or appeal; and

(6) Third-party defendant - Frank G. Weaver, the truck's original owner, who did not answer or appear at trial or appeal.

¶7. Before trial, Regency filed a motion in limine to suppress admission of an oil change sticker that indicated that the Dakota's mileage was substantially higher than shown on the odometer. Regency's position was that this document was neither admissible authentic nor as a hearsay exception. Jenkins argued that he offered this sticker to show notice that the mileage was inaccurate rather than to prove the truth of the matter asserted, i.e., that the car had more than 90,000 miles on it. Overruling Regency's hearsay objection, the trial court found the sticker was admissible and reserved its ruling on the authentication objection until trial.

¶8. At trial, Jenkins offered the sticker into evidence. Jenkins admitted that the oil sticker could have been on the replacement passenger door that was put on the Dakota to replace the original door. The parties entered into a stipulation concerning the oil change sticker. Jenkins's interpretation of the stipulation is that the odometer was tampered with before Regency's ownership; Regency's interpretation of the stipulation is that Regency did not tamper with the odometer. Over objection, Jenkins told the jury he would have been willing to pay only $3,500 for the vehicle with its mileage and problems, had he known the "truth." The trial court admitted the sticker into evidence despite hearsay and authentication objections.

¶9. As to a $1,000 repair bill on the car paid by Jenkins, offered to show damages and produced by Jenkins the day before trial, the trial court allowed it into evidence for use in refreshing Jenkins's memory because Jenkins had only received the bill the day before trial. The trial court excluded entirely the other bills offered by Jenkins for lateness of production.

¶10. Shortly before Jenkins rested, Regency introduced a title history of the truck showing that the Dakota had 51,236 miles when Jenkins purchased it; 51,186 miles when Regency purchased it; 51,176 miles when Embers purchased it; 51,160 when Harry Schermer of Hwy 49 motors purchased it; and 51,144 when Star Motors purchased the vehicle from the original owner. Regency moved for a directed verdict. That motion was denied and the matter was presented to the jury resulting in the aforementioned verdict in favor of Jenkins. Regency appeals raising the following issues:

**A) WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND DID THE COURT ERR IN FAILING TO GRANT A DIRECTED VERDICT?**

**B) DID THE COURT ERR IN FAILING TO GRANT THE MOTION IN LIMINE AND IN ALLOWING INTO EVIDENCE PLAINTIFF'S EXHIBIT 4 (THE OIL STICKER)?**

**C) DID THE COURT ERR IN FAILING TO SUSTAIN REGENCY'S OBJECTION TO APPELLANT'S EVIDENCE AND TESTIMONY REGARDING THE ESTABLISHMENT**

**OF FAIR MARKET VALUE?**

**D) DID THE COURT ERR IN GRANTING INSTRUCTION P-4 (PLAINTIFF'S DAMAGE INSTRUCTION) AND BY GRANTING A MODIFICATION TO SAME?**

**E) DID THE COURT ERR IN FAILING TO DIRECT A VERDICT OR IN FAILING TO REFORM THE VERDICT IN FAVOR OF REGENCY AGAINST EMBERS AND SCHERMER ET AL., AS WELL AS FAILING TO DIRECT A VERDICT AGAINST SCHERMER, IN LIGHT OF PEREMPTORY INSTRUCTIONS D-21 AND D-24?**

**F) DID THE COURT ERR IN GRANTING ATTORNEY'S FEES TO THE ATTORNEY FOR THE PLAINTIFF/APPELLEE AND IN GRANTING THE AMOUNT AWARDED?**

## II.

### a.

¶11. To be found liable for a violation of the Motor Vehicle Information and Cost Savings Act under 15 U.S.C. §§1981 to 1991 (1988), the plaintiff must show that the seller had an intent to defraud. 15 U.S.C. §1989 (1988). The plaintiff may satisfy the requirements of the Act by showing that the dealer did one of two things. The plaintiff may show that the defendant car dealer represented a car as having a certain mileage when the dealer had actual or constructive knowledge that the odometer reading was less than the actual miles traveled. *Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978); *Moore v. H. Gene Simmons, Inc*., 543 So. 2d 186, 187 (Miss. 1989); 15 U.S.C. §1989(b). Alternatively, the plaintiff may show that the dealer failed to disclose that the mileage was unknown if, by using reasonable care, the dealer would have had reason to know that the actual mileage exceeded the odometer reading. *Nieto*, 578 F.2d at 641. A reckless disregard in failing to determine if the odometer reading is incorrect is also sufficient to prove intent to defraud. *Haynes v. Manning*, 917 F.2d 450, 452-53 (10th Cir. 1990).

¶12. Constructive knowledge may be proved by a contradictory odometer statement from another source (*See Landrum v. Goddard*, 921 F.2d 61, 62 (5th Cir. 1991)) or by the vehicle's overall condition as compared to the mileage shown on the odometer. *See Nieto*, 578 F.2d at 642. Contrary to other types of fraud claims, the plaintiff's burden of proof is a preponderance of the evidence. *Landrum*, 921 F.2d at 62-63.

### b.

¶13. This Court's standard of review is limited when determining the sufficiency of the evidence on a motion for a directed verdict. When contradictory testimony exists, this Court will "defer to the jury, which determines the weight and worth of testimony and credibility of the witness at trial." *Odom v. Roberts*, 606 So. 2d 114, 118 (Miss. 1992). This Court "will not reverse a jury verdict unless it is against the overwhelming weight of evidence and credible testimony." *Gifford v. Four-County Elec. Power Ass'n*, 615 So. 2d 1166, 1171 (Miss. 1992). Regency, who moved for a directed verdict, was required to meet this standard with the evidence and inferences drawn therefrom viewed in a light

most favorable to Jenkins. ***Eaton v. Porter***, 645 So. 2d 1323, 1325-26 (Miss. 1994).

¶14. Factual disputes arise when "one party swears to one version of the matter in issue and another says the opposite." ***Clark v. Moore Memorial United Methodist Church***, 538 So. 2d 760, 762 (Miss. 1989). A directed verdict is inappropriate when questions of fact exist. ***Illinois Central R.R. v. White***, 610 So. 2d 308, 314 (Miss. 1992).

¶15. The plaintiff's evidence in this case consists of three items. The first is an oil sticker, allegedly located on the passenger side door. This sticker reveals a mileage of more than 90,000. Jenkins allegedly discovered the sticker only after he had purchased the truck from Regency and had taken the vehicle home. Jenkins did not know whether the sticker was applicable to his truck or was from the truck from which the replacement door was obtained.

¶16. Second, Jenkins testified as to the worn condition of the truck's individual parts. Jenkins, who was a military tank mechanic in the Korean conflict, did testify as to the worn condition of various parts. Charles Hobby of Embers testified that wear to the engine would suggest high mileage, but he did not estimate the Dakota's mileage based on its engine wear.

¶17. In Levine v. Parks Chevrolet, Inc., 331 S.E.2d 747, 748 (N.C. Ct. App. 1985), plaintiff's expert, a mechanic, testified that the car's condition clearly showed that the odometer was wrong. Furthermore, the mechanic sufficiently testified that any mechanic could have determined that the odometer was wrong based simply on the car's condition. Levine, 331 S.E. 2d at 748.

¶18. This Court holds that the evidence regarding wear on the replaced auto parts and the general testimony concerning wear as an indicator of high mileage are sufficient to establish an inference of mileage significantly in excess of the odometer reading on the vehicle. Further, the oil change sticker created a disputed question of fact regarding whether Regency had constructive knowledge that the actual mileage exceeded the odometer reading, whether reasonable care would have put Regency on notice that the actual mileage exceeded the odometer reading, or whether Regency exhibited a reckless disregard in failing to determine the inaccuracy of the odometer reading. The jury concluded Regency should have known the odometer reading was less than the actual mileage of the car. Sufficient evidence exists to support the jury verdict, in that Regency should have examined the motor to see if its age and condition were consistent with the odometer reading. Restated, the evidence is sufficient to establish that Regency had constructive knowledge that the odometer reading was less than the actual miles traveled. ***Nieto***, 578 F.2d at 641; ***Moore***, 543 So. 2d at 187; ***Levine,*** 331 S.E.2d at 751.

c.

¶19. There were two objections to the admission of the oil sticker: hearsay and authentication.

¶20. Regency objected to the sticker on grounds of hearsay,[2] in that the declarant who wrote the mileage on the sticker did not testify at the trial and the sticker was a written assertion offered to prove the truth of the matter asserted - that the vehicle had 90,000 miles. Jenkins countered, and the trial court agreed, that the sticker was not offered to prove that 90,000 miles was the actual mileage of the car, but to show that Regency had notice that the vehicle's odometer was wrong.

¶21. As Jenkins argues, out of court statements offered to prove notice rather than the truth of the matter asserted are not hearsay. *Gayten v. State*, 595 So. 2d 409, 414 (Miss. 1992). The court must closely examine the factual circumstances of each case to ensure that the truth of the matter asserted is not the true issue. Jenkins was required to prove either (1) Regency represented to him the mileage on the Dakota was 51,236 while it had actual or constructive knowledge that the actual mileage was greater than this; or (2) Regency failed to disclose to Jenkins that the actual mileage was unknown and use of reasonable care would have put Regency on notice that the actual mileage exceeded the odometer reading; or (3) Regency exhibited a reckless disregard in failing to determine the inaccuracy of the odometer reading. *See Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978); *Moore v. H. Gene Simmons, Inc.*, 543 So. 2d 186, 187 (Miss. 1989); *Haynes v. Manning,* 917 F.2d 450, 452-53 (10th Cir. 1990).

¶22. Here Jenkins finds evidentiary support for the inference that the actual mileage exceeded that shown by the odometer in the general condition of the vehicle. The oil sticker was offered solely to show that Regency had constructive knowledge or notice that the odometer reading was less than the actual mileage or that it acted in reckless disregard, he has no proof that the actual mileage is greater than 51,236. As such, it was not hearsay.

¶23. Authentication, under M.R.E. 901,[(3)](#) requires sufficient evidence to show that the document is what it is claimed to be. *Cox v. State,* 586 So. 2d 761, 767 (Miss. 1991). This Court has held in a prior odometer case that authentication of documents submitted for admission must be proved. *Moore v. H. Gene Simmons, Inc.,* 543 So. 2d 186, 187-88 (Miss. 1989).

¶24. Jenkins testified that the sticker was on the door when it left Regency. While he did not see it, his testimony, in essence was that he did not place a new door or a sticker on the truck and that a sticker could not have been placed there after he left Regency with the vehicle. Leaving his credibility for jury assessment, as we must, we must assume that the sticker was in fact there. Thus the sticker was authenticated in the only way relevant to its evidentiary purpose, notice to Regency. It was properly admitted.

d.

¶25. Regency contends that no fair market value for the truck in its condition was established and that instruction P-4 as to damages was erroneously given because it failed to require the jury to find damages with reference to fair market value. The relevance of fair market value is that actual damages are determined by the difference between the sales price of the car and the fair market value of the car, in addition to other damages "proximately caused by Defendant's acts." *Gonzales v. Vans Chevrolet, Inc*., 498 F. Supp. 1102, 1103 (D. Del. 1980).

¶26. Regency objected to Jenkins's testimony regarding his valuation of the vehicle given the knowledge of the problems that had occurred since his purchase. Jenkins stated he would have paid only $3,500 for the truck at the time he purchased it had he known of the "actual" mileage and the truck's problems. Regency states that Jenkins should not have been allowed to testify to the value of his own property at the time of purchase. Regency further argues that Jenkins's stating what he would have paid is not evidence of fair market value.

¶27. Individuals may testify as to the value of their own property. *Thomas v. Global Boat Builders*

***& Repairmen, Inc.,*** 482 So. 2d 1112, 1116 (Miss. 1986); ***Whitfield v. Whitfield,*** 40 Miss. 352, 356 (1866). We have not indicated whether this estimate of value must be rationally based. Nor have we required any predicate other than that of ownership. Curiously, in ***Thomas***, we have indicated that an owner is somehow not qualified to express an opinion as to the value of property after it has been damaged, without further qualification. ***Id***. Undoubtedly this latter pronouncement proved confusing at trial because, when Jenkins was asked the fair market value of his truck, an objection was interposed based on Jenkins's qualifications and sustained based on the lack of a proper "predicate." After several subsequent tries and a bench conference, Jenkins was finally allowed to testify as to what he would pay for it. Later, on cross-examination, Jenkins was asked whether he "put a value on this Dodge truck of $3,500," to which Jenkins responded in the affirmative. The examiner continued by asking Jenkins the basis for his value and Jenkins, in response, over objection which was overruled, related that he had been offered $1,500 to $1,800 for it by a dealer six or seven months after he bought it.

¶28. In the colloquy concerning jury instructions, the instruction P-4 was offered. That instruction as submitted directed the jury to assess damages by comparing the purchase price with the fair market value of the vehicle. The initial objection was that it did not specify a particular time as to the value of the truck. A modification was offered inserting "at the time of purchase." It was then noted that there was no testimony as to "fair market value" and there followed a discussion of the import of the testimony concerning the offer and whether it was admitted for the limited purpose of establishing a basis for Jenkins's opinion. This discussion included an offer by Jenkins to call another witness, one who was present at the courthouse and could be called without appreciable delay, to further establish fair market value. Finally, the trial court ruled that the testimony concerning the offer was for a limited purpose and that he would give the instruction striking the words "fair market." There was no objection at that time. Later, after completing the consideration of the plaintiff's instructions, the defendant interposed an objection to the instruction as modified because "there was no testimony as to damages."

¶29. In fact, there was testimony as to damages and the evidence was sufficient to allow a fair-minded jury to assess damages in this case. Jenkins was competent under our precedents to give "fair market" value without further qualification. He was asked what it was worth and to state the actual value. The objection went to competence and then to predicate, rather than to the relevance based on the absence of the words "fair market." Eventually he was allowed to answer the question couched in terms of what he would pay. It was then affirmed with him on cross-examination that his testimony as to what he would pay was the value that he placed on it. With every reason to depress value, his testimony was to the effect that the value he placed was approximately double what a dealer offered him. There was no suggestion that he was talking about anything other than a fair market value. There was no contradictory evidence of fair market value. Thus, we conclude that the elimination of the words "fair market" from the instruction did not, impermissibly mislead the jury.

**e.**

¶30. Regency complains that the jury failed to follow the peremptory instruction, D-21, telling the jury that if they found Regency liable they should also find all other defendants jointly and severally liable.[(4)] The trial court also gave another instruction, D-24, directing the jury to return a verdict against Highway 49 Motors (the predecessor-in-title to Embers) if the jury found Embers should pay

Regency for Jenkins's judgment against Regency.[(5)] During deliberation, the jury asked if it could make all defendants equally responsible. The trial judge responded, in writing, negatively; he referred the jury to several instructions, including D-21 and D-24.[(6)] The jury disregarded instructions D-21 and D-24 and found only Regency liable.

¶31. Regency argues that the jury's action constitutes error. Regency states that under implied warranties of merchantability, Embers would have a duty to indemnify Regency for damages under Mississippi's version of the Uniform Commercial Code because if the odometer reading was altered, the truck would not pass without objection in the trade. Miss. Code Ann. §75-2-314 (1972).

¶32. Cases interpreting 15 U.S.C. §1989, however, state that this Act imposes separate and individual liability for each person who violates the Act and, therefore, provides no right of recoupment. *See*, *e.g.*, ***Ferris v. Haymore***, 967 F.2d 946, 956 (4th Cir. 1992). The ***Ferris*** Court stated:

> In reliance upon the plain language and the remedial purpose of the statute, federal courts have held that odometer tampering defendants are separately liable under this statute and not entitled to assert cross-claims against each other for indemnity or contribution. *See* ***Charnetsky v. Gus Paulos Chevrolet, Inc.,*** 754 F. Supp. 188, 190-91 (D. Utah 1991); ***Mataya v. Behm Motors, Inc***., 409 F. Supp. 65, 70 (E.D. Wis. 1976); ***Stier v. Park Pontiac***, ***Inc***., 391 F. Supp. 397, 401 (S.D. W.Va. 1975); *cf*. ***Alley v. Chrysler Credit Corp.,*** 767 F.2d 138, 141-42 (5th Cir. 1985).

*Id.* at 955-56.

¶33. The ***Ferris*** Court addressed the rationale prohibiting indemnity in this case by stating:

> Granting recoupment under the section to a guilty defendant would substantially dilute not only the section's punitive but also its deterrent force by spreading among several fraudulent parties what are in truth relatively small damages awards . . . There is affirmative evidence that Congress intended the full punitive force of the statute to be felt by every person who defrauds the public through deceptive odometer manipulation -- joint wrongdoers no less so than others. "[J]udicial notions of fairness and equity must yield to the prophylactic policies of the treble-damage remedy." ***Burlington Indus., Inc. v. Milliken & Co***., 690 F.2d 380, 393 (4th Cir. 1982), *cert. denied*, 461 U.S. 914, 103 S. Ct. 1893, 77 L. Ed. 2d 283 (1983).

*Id.* at 957.

¶34. Therefore, Regency's peremptory jury instructions were incorrect statements of the law. It follows that the failure of the jury to follow these incorrect instructions is not error. ***Walker v. Dickerson***, 183 Miss. 642, 647, 184 So. 438, 439 (1938).

f.

¶35. Regency attacks the award of attorneys' fees in this case. The statute under which this claim is brought, 15 U.S.C. § 1989, authorizes attorneys' fees to successful litigants. Under our law, attorneys' fees are awarded on the basis of the information before the court, and the court's own opinion derived from "experience and observation." Miss. Code Ann. § 9-1-41 (1991 rev.). The standard for review of the award of attorneys' fees is abuse of discretion, and such awards must be

supported by credible evidence. ***Young v. Huron Smith Oil Co.***, 564 So. 2d 36, 40 (Miss. 1990).

¶36. Jenkins supported his claim with sixteen pages of itemized expenses, consisting of handwritten time sheets, and typed summaries restating the time sheets, for legibility. In total, Jenkins's attorney billed 82.50 hours at $140 per hour, for a total of $11,550 plus expenses of $164.91 for a grand total of $11,714.91. Regency argued that by the different handwriting on the time sheets, different people, including non-lawyers, did work, but that everyone's work was billed at $140 hourly. Regency argued individual points on the bills, stated that Jenkins's attorney had spent too much time on certain things and should have used computerized research capabilities. The trial court awarded Jenkins $7,500.

¶37. Regency now argues that under the standards of several Fifth Circuit decisions, Jenkins is not entitled to $7,500.[7] However, Regency does not demonstrate how the court specifically erred in its calculations or estimations of the fee. In contrast, Jenkins did support his award request with bills, and the judge adjusted it downward to $7,500. Since Regency cannot demonstrate how the trial court abused its discretion, its assignment of error is without merit.

¶38. For the foregoing reasons the judgment of the circuit court is affirmed.

**¶39. AFFIRMED.**

**HAWKINS, C.J., LEE, P.J., SULLIVAN, PITTMAN AND McRAE, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ.**


**PRATHER, PRESIDING JUSTICE, DISSENTING:**


¶40. Because the oil sticker was improperly admitted into evidence, I respectfully dissent. The sticker was hearsay; it was not adequately authenticated.

¶41. If, as the majority opinion states, the oil sticker was offered solely to show that Regency had constructive knowledge or notice that the odometer reading was less than the actual mileage, then there was no proof that the actual mileage was greater than 51,236. The oil sticker was the only evidence contradicting the odometer reading. Clearly, Jenkins needed the oil sticker to be accepted as proof that the car had actually traveled 90,000 miles -- that is, to prove the truth of the matter asserted. Consequently, the sticker was inadmissible hearsay and should have been excluded. This error requires reversal and remand for a new trial.

¶42. Moreover, the admission of the sticker was also improper because it was not adequately authenticated. I agree with the majority that authenticity of documents submitted for admission must be proven. ***See Moore v. H. Gene Simmons, Inc.,*** 543 So. 2d 186, 187-88 (Miss. 1989). However, I do not believe that it was proven with regard to the oil sticker in the case *sub judice*.

¶43. Jenkins argues, without citing case law, that his claim of finding the sticker on the door of his vehicle was sufficient to meet the authentication requirement. Nonetheless, the oil sticker could not

have been properly admitted without establishing "who wrote the note and when it was written." Frierson v. State, 606 So. 2d 604, 606-07 (Miss. 1992).

¶44. Furthermore, Jenkins did not prove the document was what he claimed it to be a document placed on the door of his vehicle indicating that it had been driven for 90,000 miles. Jenkins saw the sticker only after he got home to Philadelphia, Mississippi. Jenkins offered no proof to show the sticker was on the door of the vehicle while it was on Regency's lot, and he did not offer proof that the sticker represented the mileage of the Dakota rather than the mileage on the vehicle from which the replacement door was obtained. He might have solved this problem by having the original owner of the Dakota testify as to the circumstances of placement of the sticker, but he failed to do so. The trial court erred in admitting the oil sticker into evidence because Jenkins failed to authenticate it. This error requires reversal and remand for a new trial.

¶45. Based on the foregoing reasons, the oil sticker in this case was improperly admitted. I would reverse and remand for a new trial. Therefore, I respectfully dissent.

¶46. **ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

## ON MOTION FOR REHEARING

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

*¶47.* This matter is before the Court on a motion for rehearing. On consideration of that motion, the majority opinion previously issued is modified with respect to the disposition of the appeal of the failure to grant Regency Nissan judgment against Embers.

¶48. Notwithstanding what we say in the original opinion concerning federal law, this is a case in which a peremptory instruction was given without objection. The question whether federal law preempts any contractual or common law rights to indemnity was not raised in opposition to the instruction or otherwise. The jury failed to follow the instruction. The trial court, without explanation, failed to correct that transgression on the face of Regency's unopposed motion to do so. It appears that the failure of the jury may be attributable to the fact that no form of the verdict instruction was offered giving effect to the peremptory instruction against Embers and in favor of Regency. Under the circumstances, Regency is entitled to judgment.

¶49. We remand to the trial court for entry of judgment. We note further that Embers was granted a similar peremptory instruction against other third parties should Regency be granted a verdict against it. Embers is likewise entitled to judgment. As to the cross-claims filed in the trial court then, this case shall be reversed and remanded for entry of judgment as here indicated.

¶50. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY**

**LEE, C.J. MILLS, J., NOT PARTICIPATING.**


**McRAE, JUSTICE, DISSENTING:**

¶51. I cannot join the majority in rendering judgment for Regency where that judgment is based upon an erroneous application of federal law. Because the Odometer Disclosure Act preempts any right of indemnification or joint and several liability under state law, this Court should not be obliged to reverse the jury verdict and grant Regency the right to indemnity based solely on state procedural rules of waiver.

¶52. Allowing Regency the right of indemnification is directly contrary to Odometer Disclosure Act. The federal statute clearly prohibits recoupment by imposing separate liability for each person who violates the Act. *See, e.g., **Ferris v. Haymore**,* 967 F. 2d 946, 956 (4th Cir. 1992) (holding multiple defendants not entitled to indemnity under statute in order to preserve full punitive force of Act). The majority, in **Cooper v. General Motors Corp.**, No. 92-CA-01334-SCT (Miss. May 23, 1996), bent over backwards to hold that a state cause of action was impliedly preempted by the Automobile Safety Act, yet they will not recognize express federal preemption where the jury verdict and judgment for the plaintiff was entirely consistent with applicable federal law. Apparently, the majority is not the least bit concerned with being consistent in its review of federal preemption.

¶53. The majority holding clearly implicates a question of federal law as the procedural bar ultimately results in the erroneous application of the Odometer Disclosure Act. *See **International Longshoreman's Ass'n v. Davis**,* 476 U.S. 380, 393 (1986) (holding that party did not waive claim of preemption since underlying question of federal law should have uniform application); *see also **Brown v. Hotel Employees**,* 468 U.S. 491, 503 (1984) ("[i]f the state law regulates conduct that is actually protected by federal law, ... pre-emption follows ... as a matter of substantive right.").

¶54. Because Regency's peremptory instructions were contrary to the Odometer Disclosure Act, there was no error in the jury's failure to follow them. **Walker v. Dickson**, 183 Miss. 642, 647, 184 So. 438, 439 (1938). Regency is not entitled to judgment as a matter of federal law. Accordingly, I dissent.

**LEE, C.J., JOINS THIS OPINION IN PART.**


1. This act permits actions to be brought in the federal district courts or in any other court of competent jurisdiction and provides that, upon violation, damages in the amount of three times actual damages, or $1,500, whichever is greater, together with costs of the action and with reasonable attorney fees as determined by the court, may be awarded. 15 U.S.C. §1989 (1988).

2. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c).

3. M.R.E. 901(a) is "central to the concept of relevancy," in that if an item cannot be shown to be genuine, the item is irrelevant. M.R.E. 901 Comment.

4. D-21, the first peremptory instruction in question, states:

The Court instructs the jury that in the event you find for the Plaintiff, William H. Jenkins, against Regency Nissan, Inc. under any theory of law, then you shall find similarly for Regency Nissan, Inc. against Paul Baugh, Frank G. Weaver, Embers Wholesale Automobiles, Inc., and Harry Schermer, and award unto Regency Nissan, Inc. Judgment against them, individually, jointly and severally, in a like sum as may be awarded from Regency Nissan, Inc. in favor of Plaintiff.

5. D-24, the second peremptory instruction in question, reads as follows:

The Court instructs the Jury that if you find that Regency Nissan, Inc., is entitled to judgment against Embers Wholesale Automobiles, Inc., then you should also return a similar verdict in favor of Embers Wholesale Automobiles, Inc., against Harry Schermer, d/b/a Highway 49 Motors, and the form of your verdict shall be as follows:

"We, the jury, find in favor of Embers Wholesale Automobiles, Inc., against the Defendant, Harry Schermer d/b/a Highway 49 Motors in the amount of $_."

6. The jury asked, "For clarification to us - can we make all defendants equally responsible in damage responsibility? The trial court answered "No - Please see instructions P-6 (Plaintiff's damage instruction) and D-21 and D-24."

7. Regency uses the standards in *Halferty v. Pulse Drug Co.*, 821 F.2d 261 (5th Cir. 1987) to give guidelines in determining attorneys' fees. They require a trial court to ascertain the nature and extent of service provided; value fees by the customary rate of pay and quality of work; adjust compensation on the basis of any of twelve factors which are significant. *Id.* 821 F.2d at 272, n.14.

The twelve factors are: 1) the time and labor involved; 2) the novelty of the case; 3) the skill of the attorney; 4) the preclusion of other employment by that attorney; 5) the customary fee for this type of case; 6) the nature of compensation being fixed fee or contingency; 7) the time limitations imposed by the client; 8) the amount of award involved; 9) the experience of attorneys involved; 10) the undesirability of the case; 11) the nature and length of the professional relationship between the attorney and client; 12) awards in similar cases. *Id.* 821 F.2d at 271-72, n.12.